UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

NOEL   D.   CLARK,   JR.,
individually, NOEL D. CLARK,
JR., as sole trustee of the
Green Thumb Farm Trust, and
B.   LYNN   CALLAWAY,
individually,

       Plaintiffs,

v.                        Case No: 2:13-cv-794-FtM-29DNF

ASHLAND,   INC.,   a   Kentucky
corporation   and   HERCULES
INC.,   a   Delaware
corporation,

       Defendants.

---

## OPINION AND ORDER

    This matter comes before the Court on review of defendant Hercules, Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. #49) and defendant Ashland, Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint (Doc. #50) filed on September 24, 2014. Plaintiffs filed Responses in Opposition (Doc. #56; Doc. #57) on October 20, 2014.

### I.

    Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted).  To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level."  Id. at 555.  See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010).  This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.  "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible."  Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (internal quotation marks and citations omitted).  Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume

their veracity and then determine whether they plausibly give rise
to an entitlement to relief." Iqbal, 556 U.S. at 679.

## II.

Plaintiffs B. Lynn Callaway, individually, and Noel D. Clark,
Jr., individually and as the sole trustee of the Green Thumb Farm
Trust (the "Trust"), brought this action against Ashland, Inc. and
Hercules, Inc. for damages allegedly sustained as result of
environmental contamination on a piece of commercial farm land
located in Arcadia, Florida (the "Property").  Plaintiffs allege
that the Property, formerly a Gulf Naval Stores facility used for
turpentine extraction, was purchased by Hercules, Inc. in 1972.
Before selling the property in 1978, Hercules disposed of and
abandoned hazardous and toxic chemicals on the Property, leaving
behind a site contaminated with mounds of solidified waste.
Hercules was purchased by Ashland in 2008.

In or about 1992, a complaint reporting dredge and fill
activities on the Property was filed with the Florida Department
of Environmental Protection (FDEP).  Surface water and sediment
samples collected by the FDEP indicated the presence of xylenes,
toluene, ethylbenzene, and other aromatic hydrocarbons on the
Property.  The FDEP subsequently contacted Hercules regarding its
use of the Property and requested that Hercules undertake an
environmental assessment on the Property.  The assessment resulted

in the completion of a Preliminary Contamination Assessment Report dated February 1995, a Phase I Contamination Assessment Report dated April 1998, and a Phase II Contamination Assessment Report dated January 1999.  Based on these findings, Hercules directed URS Corp. to develop a Surficial Soil Removal Plan, Groundwater Monitoring Plan, and Risk Assessment Work Plan.  The reports were completed in 2002 and were eventually approved by the FDEP.

The Trust, having no knowledge of any environmental problems, purchased the Property in 2001.  In April 2008, Tim Haslett, a representative of Ashland, Hercules, and URS, approached Clark in order to gain access to the Property.  Haslett told Clark that he would be compensated for all damages to the Property if he granted defendants access to the Property to conduct additional testing and that he would be compensated if he assisted with the removal of trees and creation of an access point to a certain area of the Property.  Haslett also told Clark that there were no harmful contaminates on the Property.  Clark, relying on Haslett's representations, expended a tremendous amount of time and expense to help defendants gain access to the Property.  The testing was completed by the end of 2008, but Clark was never compensated for his assistance.  URS analyzed the test results and recommended that a Remedial Action Plan be developed to remediate potential source materials on the Property.

In early 2010, Callaway requested information from URS regarding the next phase of field work to be performed on the Property.  Callaway received a letter from URS on March 8, 2010, stating that "an Interim Source Removal Plan (ISRP) will be developed by ASHLAND."  Callaway, however, has yet to receive a copy of the ISRP.

In 2011, plaintiffs learned that the soil on the Property still contained toxic chemicals when 119 head of cattle died after drinking from the retention ponds on the Property.

Plaintiffs filed a nine-count First Amended Complaint on July 28, 2014, interposing claims for recovery of costs under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) § 107, 42 U.S.C. § 9607 (Count I); declaratory judgment for future costs under CERCLA § 113(g)(2), 42 U.S.C. § 9613(g)(2) (Count II); injunctive relief under the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6972, *et seq.* (Count III); damages under the Florida Pollutant Discharge Prevention and Control Act (FPDPCA), Fla. Stat. § 376.011, *et seq.* (Count IV); and for damages under theories of negligence (Count V), gross negligence (Count VI), negligence per se (Count VII), fraud (Count VIII), and continuing nuisance (Count IX).

**III.**

Defendants assert that the First Amended Complaint should be dismissed in its entirety because plaintiffs have failed to state a viable claim for relief.

**A.   Counts I and II: CERCLA**

In Count I of the First Amended Complaint, plaintiffs seek to recover all past and future response costs associated with the contaminated Property.  In order to recover costs under CERCLA § 107, plaintiffs must show: (1) that the site is a CERCLA "facility"; (2) that there was a release or threatened release of a hazardous substance; (3) which caused the plaintiffs to incur response costs consistent with the national contingency plan; and (4) the defendant is a statutorily liable person.  Blasland, Bouck & Lee, Inc. v. City of N. Miami, 283 F.3d 1286, 1302 (11th Cir. 2002).  Defendants contend that dismissal of Count I is warranted because the First Amended Complaint is devoid of any allegations concerning necessary response costs incurred by plaintiffs.  The Court agrees.

Plaintiffs have failed to allege that any necessary response action was taken or that the costs of a response action were consistent with the national contingency plan.  Due to the lack of factual allegations regarding necessary response costs, Count I will be dismissed without prejudice.  See Bunger v. Hartman, 797

F. Supp. 968, 973 (S.D. Fla. 1992) ("compliance with the NCP is one of the factors which a private litigant must establish before they may recover from those responsible for the creation of an environmental hazard . . . This element of proof, therefore, must be alleged in a cost recovery action under CERCLA.").

CERCLA also contains a provision for declaratory relief. Section 113(g)(2) provides that in any initial cost-recovery action under section 107, "the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages." 42 U.S.C. § 9613(g)(2). Declaratory relief, however, is only available "if liability for past costs has been established under section 107." City of Colton v. Am. Promotional Events, Inc.-West, 614 F.3d 998, 1008 (9th Cir. 2010). Because plaintiffs have failed to state a plausible claim under § 107, Count II must be dismissed without prejudice.

**B.   Count III: RCRA**

The RCRA permits individuals to commence an action in district court to enforce waste disposal regulations promulgated under the Act. 42 U.S.C. § 6972. "At least 60 days before commencing suit, plaintiffs must notify the alleged violator, the State, and the Environmental Protection Agency (EPA) of their intent to sue." Hallstrom v. Tillamook Cnty., 493 U.S. 20, 22 (1989) (citing 42

U.S.C. § 6972(b)(1)).  The 60-day notice provision is a mandatory precondition to suit.  Id. at 33.

Here, plaintiffs have failed to allege that they have complied with the RCRA notice requirements; thus, the Court must dismiss plaintiffs' RCRA claim.  See Hallstorm, 493 U.S. at 33 ("we hold that where a party suing under the citizen suit provisions of RCRA fails to meet the notice and 60-day delay requirements of § 6972(b), the district court must dismiss the action as barred by the terms of the statute.").  Count III is dismissed without prejudice.

**C.   Count IV: Fla. Stat. § 376.313**

Count IV of the First Amended Complaint asserts a statutory claim under Fla. Stat. § 376.313.  The statute at issue is found within sections 376.30-376.319, Florida Statutes, originally enacted as part of the Water Quality Assurance Act of 1983.  See Aramark Uniform & Career Apparel, Inc. v. Easton, 894 So. 2d 20, 22 (Fla. 2004).  These particular statutes comprise a comprehensive statutory scheme designed to protect Florida's surface and ground waters.  See Fla. Stat. § 376.302.  Section 376.313, entitled "Nonexclusiveness of remedies and individual cause of action for damages under ss. 376.30-376.317," allows private parties to sue for damages "resulting from a discharge or other condition of pollution covered by ss. 376.30-376.319." Fla. Stat. § 376.313(3).

In order to state a plausible claim under Fla. Stat. § 376.313(3), a plaintiff must allege that: (1) a prohibited discharge or other pollutive condition occurred, and (2) damages.  See Curd v. Mosaic Fertilizer, LLC, 39 So. 3d 1216, 1221-22 (Fla. 2010).

### 1.

Defendants assert that plaintiffs' statutory claim must be dismissed because it is barred by the four-year statute of limitations.  The statute of limitations is an affirmative defense, and the burden of proving an affirmative defense is on the defendant.  Tello v. Dean Witter Reynolds, Inc., 410 F.3d 1275, 1292 (11th Cir. 2005).  Dismissal under Rule 12(b)(6) on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred.  Id.

Florida law provides that an action founded on statutory liability must be brought within four years from the time the last element constituting a cause of action accrues.  Fla. Stat. § 95.11(3)(f).  Here, defendants assert that the limitations period expired in 2012 because plaintiffs learned of the contamination in 2008.  Plaintiffs, however, allege that defendants informed them in 2008 that there were no harmful contaminants on the Property.  (Doc. #36, ¶ 34.)  It was not until 2011 that plaintiffs learned that the Property was still contaminated with hazardous substances.  (Id. ¶¶ 46-48.)  Because the allegations suggest that

plaintiffs' cause of action did not accrue until 2011, the Court finds that it is not apparent from the face of the First Amended Complaint that plaintiffs' claim is time barred. Accordingly, defendants' motion to dismiss Count IV as time barred is denied.

### 2.

Defendants also argue that plaintiffs have no private right of action for any damages beyond the cost remediation. The language of Fla. Stat. § 376.313(3) allows any person to recover damages suffered as a result of pollution. Curd, 39 So. 3d at 1221. "Damage," as used in chapter 376, is defined as "the documented extent of any destruction to or loss of any real or personal property, or the documented extent, pursuant to s. 376.121, of any destruction of the environment and natural resources, including all living things except human beings, as the direct result of the discharge of a pollutant." Fla. Stat. 376.031(5). Under this broad definition of damages, plaintiffs' recovery is not limited to the cost of remediation. See Curd, 39 So. 3d at 1222. Thus, defendants' motion to dismiss Count IV is denied.

### D.   Counts V and VI: Negligence and Gross Negligence

Plaintiffs' negligence and gross negligence claims are premised on an allegation that Hercules negligently conducted its operations on the Property over thirty-five years ago, and failed

to protect plaintiffs from the effects of the waste disposal practices and site operations undertaken at the facility. Defendants argue that Hercules, as one of the many remote owners of the Property, owed no duty to plaintiffs.  Plaintiffs do not argue otherwise.

In order to state a claim for negligence under Florida law, the plaintiff must allege (1) a duty or obligation recognized by the law requiring the defendant to protect others from unreasonable risks; (2) a breach of that duty; (3) a reasonably close casual connection between the conduct and the resulting injury; and (4) actual loss or damages.  Williams v. Davis, 974 So. 2d 1052, 1056 (Fla. 2007) (citing Clay Elec. Coop., Inc. v. Johnson, 873 So. 2d 1182, 1185 (Fla. 2003)).  A claim for gross negligence similarly requires a plaintiff to plead the existence of a legal duty.  Lamm v. State Street Bank and Trust, 749 F.3d 938, 947 (11th Cir. 2014) (applying Florida law).  A duty of care is "a minimal threshold legal requirement for opening the courthouse doors."  McCain v. Fla. Power Corp., 593 So. 2d 500, 502 (Fla. 1992) (footnote and emphasis omitted).  The duty of care in a negligence action is a question of law.  Cheeks v. Dorsey, 846 So. 2d 1169, 1172 (Fla. 4th DCA 2003).

In Florida, the doctrine of caveat emptor (literally, "let the buyer beware")  continues to apply to commercial real property

transactions.  <u>Hayim Real Estate Holdings, LLC v. Action Watercraft Int'l, Inc.</u>, 15 So. 3d 724, 727 (Fla. 3d DCA 2009).  The doctrine of caveat emptor, as it pertains to commercial real property, provides that a seller of commercial property owes no duty to a successor in title for damage to the land because the successor can protect itself in a number of ways, including careful inspection and price negotiation.  <u>Id.</u> (citing <u>Futura Realty v. Lone Star Bldg. Centers, Inc.</u>, 578 So. 2d 363, 365 (Fla. 3d DCA 1991)).  Thus, Hercules' prior ownership of the Property does not give rise to a legal duty.  <u>See</u> <u>Futura</u>, 578 So. 2d at 365 (seller of contaminated land owed no duty to subsequent purchaser).  Because plaintiffs have failed to allege any other facts that would give rise to a legal duty, Counts V and VI will be dismissed without prejudice.

**E.   Count VII: Negligence Per Se**

In Count VII of the First Amended Complaint, plaintiffs allege that defendants were negligent per se because they violated Fla. Stat. § 376.313.  "A cause of action in negligence per se is created when a penal statute is designed to protect a class of persons, of which the plaintiff is a member, against a particular type of harm."  <u>Newsome v. Haffner</u>, 710 So. 2d 184, 186 (Fla. 1st DCA 1998).  In Florida, violations of two types of statutes may establish negligence per se.  First, negligence per se is

12

established by violation of a "strict liability" statute, which is "designed to protect a particular class of persons from their inability to protect themselves." deJesus v. Seaboard Coast Line R.R. Co., 281 So. 2d 198, 201 (Fla. 1973) (citing Tamiami Gun Shop v. Klein, 116 So. 2d 421 (Fla. 1959)).  Strict liability statutes comprise a narrow group of "unusual and exceptional statutes," including child labor laws and statutes prohibiting the sale of firearms to minors.  Eckelbarger v. Frank, 732 So. 2d 433, 435-36 (Fla. 2d DCA 1999).

Second, negligence per se is demonstrated by violation of "any other statute which establishes a duty to take precautions to protect a particular class of persons from a particular injury or type of injury." deJesus, 281 So. 2d at 201.  The plaintiff must establish that he "suffered injury of the type the statute was designed to prevent, and that the violation of the statute was the proximate cause of his injury." Id.  The Florida Supreme Court has held that a violation of any other type of statute, such as traffic regulations, is considered only prima facie evidence of negligence. Id.

In this case, plaintiffs allege that defendants violated Fla. Stat. § 376.313.  Sections 376.30-376.319, however, were enacted "for the general welfare and the public health and safety of the state and its inhabitants." Fla. Stat. § 376.315.  See also Curd,

39 So. 3d at 1221.   Because the statute at issue was enacted to protect the general public as opposed to a particular class of persons, it cannot serve as the basis for a negligence per se claim.   See Chevron U.S.A., Inc. v. Forbes, 783 So. 2d 1215, 1219-20 (Fla. 4th DCA 2001).   Accordingly, Count VII will be dismissed without prejudice.

**F.   Count VIII: Fraud**

In order to state a cause of action for fraudulent misrepresentation under Florida law, a plaintiff must prove:  "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." Butler v. Yusem, 44 So. 3d 102, 105 (Fla. 2010).

Here, plaintiffs allege that in April 2008, Haslett, a representative of Ashland, Hercules, and URS, approached Clark in order to gain access to the Property.   Haslett told Clark that he would be compensated for all damages to the Property if he granted defendants access to the Property to conduct additional testing and that he would be compensated if he assisted with the removal of trees and creation of an access point to a certain area of the Property.   Clark, relying on Haslett's representations, expended a tremendous amount of time and expense to help defendants gain

access to the Property, but was never paid for his efforts.  These facts do not constitute an actionable fraud.  At most, plaintiffs have alleged "a mere promise not performed, which, by itself, cannot form the predicate for actionable fraud." Biscayne Inv. Grp. Ltd. v. Guarantee Mgmt. Servs., Inc., 903 So. 2d 251, 255 (Fla. 3d DCA 2005).  Because plaintiffs have failed to state a claim for fraud, Count VIII will be dismissed without prejudice.

## G.   Count IX: Nuisance

In Count IX, plaintiffs assert a claim for damages resulting from a continuing nuisance.  Plaintiffs, however, have failed to state a viable claim because a claim for a continuing nuisance cannot be "based upon an alleged condition on [plaintiffs'] own property, which existed at the time [plaintiffs] purchased the land." Morgan v. W.R. Grace & Co., 779 So. 2d 503, 507 (Fla 2d DCA 2000) (citing Philadelphia Elec. Co. v. Hercules, Inc., 762 F.2d 303, 314 (3d Cir. 1985)).  Count IX is therefore dismissed without prejudice.

## IV.

Ashland also asserts that the claims in the First Amended Complaint should be dismissed to the extent they are premised on a theory that Ashland is somehow liable for the alleged acts and omissions of Hercules because plaintiffs have failed to allege any facts to pierce the corporate veil.  "In a situation involving an

attempt to impose liability on a parent because its subsidiary owns a pollution-causing facility, the parent can be subjected to liability as an owner if the corporate veil can be pierced." Atlanta Gas Light Co. v. UGI Utils., Inc., 463 F.3d 1201, 1204 (11th Cir. 2006). In order to pierce the corporate veil, the plaintiffs must prove that: (1) the shareholder dominated and controlled the corporation to such extent that the corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos of the corporation; (2) the corporate form must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant. Molinos Valle Del Cibao, C. por A. v. Lama, 633 F.3d 1330, 1349 (11th Cir. 2011).

In this matter, plaintiffs only allege that Hercules was acquired by Ashland in 2008. There are no other factual allegations that would allow a trier of fact to impute liability to Ashland for the alleged acts or omissions of its subsidiary, Hercules. The Court therefore finds that plaintiffs have failed to plausibly allege that Ashland is liable for the acts and omissions of Hercules. As such, Count IV of the First Amended Complaint must be dismissed as to Ashland because there is no independent basis for liability against Ashland.

Accordingly, it is now

**ORDERED:**

1.   Defendant Hercules, Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. #49) is **GRANTED in part and DENIED in part.**   Counts I-III and V-IX are dismissed without prejudice. The motion is otherwise denied.

2.   Defendant Ashland, Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint (Doc. #50) is **GRANTED.**   All counts against Ashland are dismissed without prejudice.

3.    Plaintiffs may file a Second Amended Complaint within **FOURTEEN (14) DAYS** of this Opinion and Order.

**DONE AND ORDERED** at Fort Myers, Florida, this __31st__ day of March, 2015.


JOHN E. STEELE
UNITED STATES DISTRICT JUDGE


Copies:

Plaintiffs
Counsel of record