UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

NOEL D. CLARK, JR.,
individually,

        Plaintiff,

v.                              Case No: 2:13-cv-794-FtM-29MRM

ASHLAND, INC., a foreign
corporation, HERCULES INC.,
a foreign corporation, TIM
HASSETT, Ashland employee,
individually,          URS
CORPORATION, a foreign
corporation, BRUCE DESILET,
individually, EDWARD W.
SIERSEMA, JR.       ,
individually,       FLORIDA
DEPARTMENT OF ENVIRONMENTAL
PROTECTION, STEVE BELL,
individually,       WILLIAM
KUTASH,       individually,
HERSCHELL T. VINYARD,
individually,       JOHNATHON
STEVENSON, individually,
CAROLYN J. COOPER,
individually, and MARY E.
YEARGON, individually,

        Defendants.

_____

## **OPINION AND ORDER**

    This matter comes before the Court on review of the following

motions to dismiss: (1) State of Florida Department of

Environmental Protection and its current employees Jonathon

Stevenson and Mary E. Yeargan, and former employees Steve Bell,

William Kutash, and Herschell T. Vineyard, Motion to Dismiss the

Fourth Amended Complaint (Doc. #196) filed on March 31, 2016; (2) Hercules Incorporated and Ashland Inc.'s Motion to Dismiss Plaintiff's Fourth Amended Complaint (Doc. #213) filed on September 16, 2016; (3) Timothy Hassett and Carolyn J. Straton's[1] Motion to Dismiss Plaintiff's Fourth Amended Complaint (Doc. #214) filed on September 16, 2016; and (4) URS Corporation, Edward W. Siersema, Jr., and Bruce Desilet's Motion to Dismiss Plaintiff's Verified Fourth Amended Complaint and, Alternatively, for a More Definite Statement (Doc. #215) filed on September 19, 2016. Plaintiff filed Responses (Docs. ##224, 226, 227, 229) in opposition to each the motion.

## I.

This matter arises out of the pollutant contamination of real property in DeSoto County, Florida now owned by plaintiff Noel D. Clark (plaintiff or Clark). Plaintiff's Fourth Amended Complaint (Doc. #178) contains 232 paragraphs and thirteen (13) counts against thirteen (13) defendants alleging violations of various state and federal laws. All defendants seek dismissal of all counts of the Fourth Amended Complaint which relate to them.

---

[1] Carolyn J. Straton has been named as Carolyn J. Cooper in plaintiffs' Fourth Amended Complaint. Accordingly, references in this Opinion and Order to Straton or Cooper refer to the same individual.

## A. Jurisdiction of Court

Plaintiff's assertion of diversity jurisdiction (Doc. #178, ¶ 1) is ineffective since he has not alleged the citizenship of all parties, and it seems apparent that such allegations would establish that the citizenship of at least one defendant is non-diverse from plaintiff's citizenship. Plaintiff has, however, alleged federal question jurisdiction based upon the presence of causes of action premised on federal statutes. Thus, the Court has subject matter jurisdiction to proceed with the motions.

## B. Summary of Factual Allegations

In brief, the Fourth Amended Complaint (Doc. #178) alleges the following underlying material facts:

On an unstated date, defendant Hercules, Inc. (Hercules), a Delaware corporation (id. ¶ 5), bought the subject real property (hereafter the Property) and conducted a Stumping Operation on it from 1972 through 1978, (id. ¶ 18). The Stumping Operation "consisted of extracting and working with rosin to produce turpentine, tall oil, rosin, derivatives, paper chemicals, toxaphene, delnav, and agricultural insecticides." (Id. ¶ 19.) Hercules would extract wood rosin from pine stumps, wash the extract in water towers, and deposit the warm mixture into settling basins. (Id. ¶ 20.) Hercules would remove the remaining sludge and pump it directly from the settling basins into a manmade retention pond through an underground tank and pipe system, as

3

well as "numerous above ground tanks." (Id. ¶ 21.) During this time, Hercules discharged various pollutants onto the Property. (Id. ¶ 22.)

On an unstated date, defendant Ashland, Inc. (Ashland), a Kentucky corporation (id. ¶ 6), purchased Hercules and its liabilities in the United States, (id. ¶ 46). Plaintiff describes Ashland as "the informed buyer" (id. ¶ 23), and "the buyer of Hercules with full knowledge," (id. ¶ 120). Few additional facts about Ashland are articulated.

In 1978, Hercules sold the Property to Herbert Hutner without having remediated the contamination on the Property, in violation of Chapter 376, Florida Statutes. (Id. ¶¶ 22, 25.) Hercules left behind the underground storage tanks and piping from the Stumping Operation (id. ¶¶ 66-67), which contained hazardous and toxic substances, (id. ¶ 22). Over time the underground storage tanks and piping began to rust and leak; the hazardous substances migrated from the Property and contaminated the groundwater, soil, and air on and around the Property in violation of federal and Florida law. (Id. ¶¶ 22, 59, 66-67.)

On an unstated date Daniel Mahler inherited the Property from Herbert Hutner and Ms. Barbara. (Id. ¶ 27.)

In 2001, plaintiff Clark and former plaintiff B. Lynn Callaway purchased the 81 acre Property from Daniel Mahler. (Id. ¶¶ 28, 75, 79.) Plaintiff asserts that at the time they purchased the

4

Property, plaintiff conducted a diligent search of the property title records and found nothing indicating the existence of potentially hazardous waste on the Property. (Id. ¶ 29.) Despite the prior commercial stumping operation which had been conducted on the Property, plaintiff alleges the Property was zoned residential. (Id. ¶ 28.) Plaintiff further alleges that he purchased the property for the purpose of running a cattle ranch (id. ¶ 30) and did so (id. ¶¶ 73-74, 79), building cattle chutes and five separate holding pens, fencing in the entire property, and placing three mobile homes and one recreational vehicle on the property, (id. ¶¶ 30, 79). Until relatively recently, plaintiff resided on the Property. (Id. ¶ 79.)

In 2008, plaintiff received mail correspondence from the Florida Department of Environmental Protection (FDEP) notifying him for the first time of the potential contamination situation involving Hercules and his Property. (Id. ¶ 32.) This was the first notice plaintiff had of the possible pollutant contamination of the Property. (Id. ¶¶ 32, 131.)

Plaintiff initially cooperated with the FDEP by allowing Hercules, Ashland, FDEP, and other defendants onto the Property to take steps to remediate the contamination (id. ¶ 43), and by performing extensive work himself, (id. ¶¶ 71, 94). Plaintiff became convinced, however, that they were on the Property "to destroy, hide, and cover up the evidence and to misrepresent the

extent of damages caused by the site." (Id. ¶¶ 43, 46, 50.) Therefore, plaintiff issued a no trespass notice to all named defendants unless an access agreement was negotiated. (Id. ¶¶ 43, 45, 48-49, 123.) There are no allegations that any defendant was on the Property thereafter without plaintiff's permission. Defendant URS prepared a report for FDEP in 2009, which plaintiff asserts intentionally misrepresented the existence of the underground tanks and pipes, and the chemicals leaking therefrom. (Id. ¶¶ 66, 72.)

Plaintiff alleges that there is a continuing release of pollutants onto the Property from the underground pipe and tank system, which are now rusted and leaking, leaching hazardous wastes into the soil groundwater. (Id. ¶ 59.) This hazardous waste continues to migrate from the Property to neighboring wells through the groundwater aquifers and to the Peace River recreation area less than one-quarter mile away from the Property. (Id. ¶¶ 63-68, 85.) This has caused plaintiff a number of different types of injuries and damages. (Id. ¶¶ 144-45, 161.)

Plaintiff alleges that the FDEP and its individually named employees were malfeasant and conspired with Hercules and Ashland and the other defendants to conceal the violations and contamination of the Property. (Id. ¶¶ 32-42, 48-51.) Plaintiff alleges that FDEP failed to diligently perform its duties (id. ¶¶ 41-42), and that all defendants made false representations to him

and were part of a racketeering enterprise concerning the contamination of his Property, (id. ¶¶ 45-47, 52-53, 72, 80-137).

**II.**

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555. See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

7

*Iqbal*, 556 U.S. at 678.   "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible."   *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted).   Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."   *Iqbal*, 556 U.S. at 679.

"Generally, the existence of an affirmative defense will not support a motion to dismiss," *Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984), *aff'd on reh'g*, 764 F.2d 1400 (11th Cir. 1985) (en banc) (per curiam) (reinstating panel opinion), because plaintiffs are not required to negate an affirmative defense in their complaint.   *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).   A complaint may be dismissed, however, when the existence of an affirmative defense "clearly appears on the face of the complaint." *Quiller*, 727 F.2d at 1069.   *See also La Grasta*, 358 F.3d at 845 ("[A] Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is 'apparent from the face of the complaint' that the claim is time-barred" (quoting *Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1251 (11th Cir. 2003))); *Douglas v. Yates*, 535 F.3d 1316, 1321 (11th Cir. 2008)(same).

A pleading drafted by a party proceeding pro se, like the Fourth Amended Complaint at issue here, is held to a less stringent standard than one drafted by an attorney, and the Court will construe the allegations contained therein liberally. <u>Jones v. Fla. Parole Comm'n</u>, 787 F.3d 1105, 1107 (11th Cir. 2015). "This liberal construction, however, does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action.'" <u>Hickman v. Hickman</u>, 563 F. App'x 742, 743 (11th Cir. 2014) (internal quotation marks and citations omitted). *Pro se* parties are still required to conform to the procedural rules. <u>Id.</u>

### III.

Once again, plaintiff's complaint is a shotgun pleading which hinders any reasonable construction of his claims. If plaintiff has valid causes of action, he has obfuscated them by incorporating over 120 paragraphs into each of his thirteen counts. Most of the incorporated paragraphs have nothing to do with the specific cause of action, but simply force the Court and opposing parties to sift through irrelevant allegations and decide for themselves which are material to each count. <u>Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.</u>, 305 F.3d 1293, 1295 nn.9 & 10 (11th Cir. 2002). Given the age of the case, the Court makes one last effort to determine if plaintiff has plausibly stated any cause of action.

**A. Claims Against Hercules and Ashland:   Counts I Through V**

Counts I through Count V purport to state causes of action against only Hercules and Ashland.  The Court will address these five counts first, beginning with Counts I and IV.

**(1)   Count I: Violation of the Florida Pollutant Discharge and Control Act;**

**Count IV:  Violation of Chapter 376, Florida Statutes**

Count I and Count IV of the Fourth Amended Complaint both purport to set forth statutory causes of action under Chapter 376 of the Florida Statutes.   Chapter 376 addresses "Pollutant Discharge Prevention and Removal" and contains a series of statutes addressing those goals.  The first portion of Chapter 376 is the Florida "Pollutant Discharge Prevention and Control Act," which is set forth in sections 376.011-376.21, Florida Statutes, and addresses pollution of coastal waters and land.  See Fla. Stat. § 376.011.  Other portions of Chapter 376 address pollution of surface and ground waters, Fla. Stat. §§ 376.30-376.319, as well as other aspects of pollution discharge prevention and removal.

**(a)   Failure to State a Claim Under Florida Pollutant Discharge Prevention and Control Act – Count I**

Count I of plaintiff's Fourth Amended Complaint alleges Hercules and Ashland are strictly liable for damages for violation of the "Florida Pollutant Discharge and Control Act." (Doc. #178,

¶ 139.)[2] Count I asserts that Hercules was the contaminator who illegally sold its un-remediated, unabated facility, from which pollutants are now trespassing on plaintiff's Property, thus qualifying as a "person in charge" as defined in section 376.031(15), Florida Statutes (Doc. #178, ¶ 141); that Hercules has not eliminated the hazardous substances or their continuing discharges into the air and water table (id. ¶ 142); that as the past owner of the facility and past owner and contaminator of the Property, Hercules is liable for contaminates which continue to flow into and invade the Peace River and Joshua Creek, neighboring residential wells, and plaintiff's Property, (id. ¶ 143). Plaintiff alleges that he has suffered a variety of personal injuries and monetary damages as a direct and proximate result of the violation of the Florida Pollutant Discharge and Control Act. (Id. ¶¶ 144-45.)

Hercules and Ashland assert that Count I cannot state a claim under the Pollutant Discharge Prevention and Control Act, Fla. Stat. §§ 376.011-376.21, because plaintiff has not, and cannot, allege that the site has polluted any coastal waters or lands, as required by the statute. (Doc. #213, p. 14.)

---

[2] Florida has a "Pollutant Discharge **Prevention** and Control Act," which the Court infers plaintiff intends to allege as the basis for Count I.

The Pollution Discharge Prevention and Control Act prohibits "[t]he discharge of pollutants into or upon any coastal waters, estuaries, tidal flats, beaches, and lands adjoining the seacoast of the state in the manner defined by ss. 376.011-376.21." Fla. Stat. § 376.041. This portion of Chapter 376 was first enacted in 1970 and "provides a cause of action for parties harmed by pollution of coastal waters and lands." Curd v. Mosaic Fertilizer, LLC, 39 So. 3d 1216, 1229 (Fla. 2010) (Polston, J., concurring). That statutory cause of action provides:

> Notwithstanding any other provision of law, any person may bring a cause of action against a responsible party in a court of competent jurisdiction for damages, as defined in s. 376.031, resulting from a discharge or other condition of pollution covered by ss. 376.011-376.21. In any such suit, it shall not be necessary for the person to plead or prove negligence in any form or manner. Such person need only plead and prove the fact of the prohibited discharge or other pollutive condition and that it occurred. The only defenses to such cause of action shall be those specified in s. 376.12(7). The court, in issuing any final judgment in such action, may award costs of litigation, including reasonable attorney's and expert witness fees, to any party, whenever the court determines such an award is in the public interest.

Fla. Stat. § 376.205. Thus, "any person" may bring a cause of action under section 376.205 if he adequately alleges that: (1) defendant is a "responsible party" under the Act; (2) plaintiff suffered "damages" which are recoverable under the Act; and (3) the recoverable damages result from a discharge or other condition

of pollution covered by sections 376.011-376.21. Fla. Stat. § 376.205.

Plaintiff Clark, of course, qualifies within the "any person" phrase of section 376.205. Plaintiff may bring this cause of action only against "a responsible party," which is defined in relevant part as "any person owning or operating the facility." Fla. Stat. § 376.031(20)(b). The Court finds that Count I adequately alleges that Hercules was the owner and operator of an onshore facility, and hence Hercules is sufficiently alleged to be a responsible party. Ashland, however, was never an owner or operator of the onshore facility. By the time Ashland purchased the assets of Hercules in 2008 (Doc. #36, ¶ 45), Hercules had long-since sold the Property and thus had not been an owner or operator for about twenty years.

While plaintiff has alleged numerous components of damages in Count I, not all damages are recoverable under the Pollution Discharge Prevention and Control Act. The statute contains a limiting definition of "damage":

> "Damage" means the documented extent of any destruction to or loss of any real or personal property, or the documented extent, pursuant to s. 376.121, of any destruction of the environment and natural resources, including all living things except human beings, as the direct result of the discharge of a pollutant.

Fla. Stat. § 376.031(5). While most of plaintiff's claimed injuries and damages (Doc. #178, ¶ 144) are not recoverable under

the Act, plaintiff has alleged certain monetary damages, including diminished value of his Property, (id. ¶ 145). These are recoverable damages under the statute. Adinolfe v. United Techs. Corp., 768 F.3d 1161, 1175 (11th Cir. 2014). Therefore, plaintiff has sufficiently pleaded this element of the cause of action.

The final element of the cause of action is that the recoverable damages must result from a discharge or other condition of pollution covered by sections 376.011-376.21, Florida Statutes. Fla. Stat. § 376.205. The prohibited act under these statutes is the "discharge" of "pollutants into or upon any coastal waters, estuaries, tidal flats, beaches, and lands adjoining the seacoast of the state in the manner defined by ss. 376.011 – 376.21." Id. § 376.041. "Discharge" is defined to "include[ ], but is not limited to, any spilling, leaking, seeping, pouring, emitting, emptying, or dumping which occurs within the territorial limits of the state or outside the territorial limits of the state and affects lands and waters within the territorial limits of the state." Id. § 376.031(7). The physical location of the discharge becomes important because the other statutes in Chapter 376 prohibiting discharge of pollutants on surface and ground waters only apply to discharge "which occurs and which affects lands and the surface and ground waters of the state **not regulated by ss. 376.011-376.21**." Id. § 376.301(12) (emphasis added).

14

Read liberally, plaintiff alleges that pollutants left in storage tanks and piping on plaintiff's Property by Hercules have leaked out and contaminated his Property and the surrounding properties, including the Peace River and Joshua Creek. (Doc. #178, ¶¶ 63, 85, 141, 143, 145, 159.) Assuming this is factually true, as the Court must at this stage of the proceedings, the discharge of pollutants may have been into or upon "any coastal waters, estuaries, tidal flats, beaches, and lands adjoining the seacoast of the state" within the meaning of section 376.041, Florida Statutes. While defendants argue to the contrary, they have not provided the Court with any binding definition of these terms or established that the discharges at issue cannot come within the meaning of this phrase.

In sum, plaintiff has not plausibly stated a cause of action in Count I against defendant Ashland, who has never been a "responsible party," so Count I of the Fourth Amended Complaint will be dismissed with prejudice as to Ashland. Count I has not been shown to be implausible as to Hercules, at least as to the limited damages allowed by statute. The motion to dismiss Count I will be denied as to defendant Hercules.

### (b)  Failure to State a Claim Under Chapter 376 – Count IV

Count IV of plaintiff's Fourth Amended Complaint alleges Hercules and Ashland are strictly liable for damages for violation of sections 376.12(5) and 376.313, Florida Statutes. (Doc. #178,

¶ 157.)  Count IV asserts that Hercules owned and operated the Gulf Naval Stores, a "facility" as defined by Florida Statute section 376.031(15), which is now owned by plaintiff.  (Id. ¶ 159.) Count IV further alleges that plaintiff suffered various personal injuries as a direct result of the violation of "Strict Liability Florida Statutes 376" and monetary damages.  (Id. ¶¶ 160-62.) Count IV does not specifically allege that either defendant did anything, but the Court infers that the conduct plaintiff intends to allege is the contamination of what is now his Property, as had been described in Count I.  (Id. ¶¶ 141-43.).

This portion of Chapter 376 was originally enacted as part of the Water Quality Assurance Act of 1983, and comprises a comprehensive statutory scheme designed to protect Florida's surface and ground waters.  Fla. Stat. §§ 376.30-376.319.  See Aramark Unif. & Career Apparel, Inc. v. Easton, 894 So. 2d 20, 22 (Fla. 2004).  These statutes have their own private cause of action provision, which provides:

> Except as provided in s. 376.3078(3) and (11), nothing contained in ss. 376.30-376.317 prohibits any person from bringing a cause of action in a court of competent jurisdiction for all damages resulting from a discharge or other condition of pollution covered by ss. 376.30-376.317 and which was not authorized pursuant to chapter 403.  Nothing in this chapter shall prohibit or diminish a party's right to contribution from other parties jointly or severally liable for a prohibited discharge of pollutants or hazardous substances or other pollution conditions. Except as otherwise provided in subsection (4) or

16

> subsection (5), in any such suit, it is not necessary for such person to plead or prove negligence in any form or manner.  Such person need only plead and prove the fact of the prohibited discharge or other pollutive condition and that it has occurred.  The only defenses to such cause of action shall be those specified in s. 376.308.

Fla. Stat. § 376.313(3).  See Curd, 39 So. 3d at 1221.  Thus, "any person" may bring a cause of action under section 376.313(3) if he adequately alleges that:  (1) plaintiff suffered "damages" recoverable under the statutes; and (2) the recoverable damages resulted from a discharge or other condition of pollution covered by sections 376.30-376.317.  Fla. Stat. § 376.313(3).  Plaintiff need not show that defendant caused the discharge of pollutants. Aramark, 894 So. 2d at 24.

Once again, plaintiff comes within the phrase "any person" who may bring the cause of action.  Under this portion of Chapter "all damages" may by recovered.  Fla. Stat. § 376.313(3).  Count IV adequately pleads the damage element of the cause of action.

As relevant to this case, the statutes prohibit the "discharge [of] pollutants or hazardous substances into or upon the surface and ground waters of the state or lands, which discharge violates any departmental 'standard' as defined in s. 403.803(13)."  Id. § 376.302(1)(a).  Discharges governed by these statutes must occur on land or waters "not regulated by ss. 376.011-376.21."  Id. § 376.301(13).  Once again, there are no allegations which establish any basis for Ashland's liability, since it was not an owner or

operator of a facility at any time.  Ashland will be dismissed with prejudice.  The Court concludes that Count IV sufficiently alleges a cause of action against Hercules, and the motion to dismiss Count IV is denied as to Hercules.

Defendants also assert that plaintiff cannot state a claim in Count IV because the doctrine of caveat emptor protects a seller of commercial real property from any liability to the purchaser from a condition of the property that preexists the sale.  (Doc. #213, pp. 15-17.)  This potential affirmative defense, however, cannot be resolved on the pleadings in this case.

The doctrine of caveat emptor has been abolished in Florida for residential real estate transactions.  Johnson v. Davis, 480 So. 2d 625 (Fla. 1985); Mansur v. Eubanks, 401 So. 2d 1328 (Fla. 1981).  Florida courts have been at odds concerning its continued applicability in regard to commercial real estate transactions and violations under the Florida pollution statutes. Compare Mostoufi v. Presto Food Stores, Inc., 618 So. 2d 1372 (Fla. 2d DCA 1993), overruled on other grounds by Aramark, 849 So. 2d 20, with Kaplan v. Peterson, 674 So. 2d 201 (Fla. 5th DCA 1996).  The Florida Supreme Court has not yet resolved the conflict.

Plaintiff's Fourth Amended Complaint contains allegations supporting both a residential use and a commercial use of the Property.  Plaintiff alleges that the property at issue is residential and that there are homes on the property. (Doc. #178,

18

¶¶ 28, 79.) Elsewhere plaintiff discusses his ranch business and running a cattle ranch on the property. (Id. ¶¶ 30, 74, 79.) Hercules does not cite to any Florida decision discussing the application of caveat emptor in such a mixed-use situation. Because the existence of caveat emptor does not clearly appear on the face of the Fourth Amended Complaint, and Florida law appears unsettled, the doctrine of caveat emptor does not preclude the cause of action in Count IV.

In sum, the motion to dismiss Ashland is granted as to Count I and Count IV, with prejudice. The motion to dismiss Hercules is denied as to Count I and Count IV.

### (2) Count II: Trespass

Defendants Hercules and Ashland move to dismiss Count II because: (1) At the time of the alleged chemical trespass, plaintiff did not have an ownership or possessory interest in the property; and (2) (reading plaintiff's Count most liberally) Defendants' entry on the property as a contractor is not alleged to have been unauthorized. (Doc. #213, pp. 22-23.)

Count II of plaintiff's Fourth Amended Complaint asserts a damages claim against defendants Hercules and Ashland[3] for "Strict

---

[3] Timothy Hassett and Carolyn J. Straton have responded to the trespass count in their Motion to Dismiss. (Doc. #214, pp. 18-19.) Since plaintiff only asserted this claim against defendants Hercules and Ashland (Doc. #178, ¶ 146), this portion of the individual's motion to dismiss is moot.

Liability Trespass." (Doc. #178, ¶ 146.) Plaintiff asserts that at all times mentioned Hercules owned and operated the Gulf Navel Stores "facility," as defined by Florida Statute section 376.031(15). (Id. ¶ 148.)[4] Count II alleges that plaintiff suffered multiple injuries and damages "[a]s a direct and proximate result of Hercules and Ashland Inc violation of Chemical Trespass on Plaintiff Property." (Id. ¶¶ 149-50.) Count II provides no additional information about the "Chemical Trespass" on his Property, and does not allege any other factual basis for a trespass claim.

"A simple definition of a civil trespass to real property is an injury to or use of the land of another by one having no right or authority. To obtain a recovery for a trespass to real property then, it is clear that the aggrieved party must have had an ownership or possessory interest in the property at the time of the trespass." Winselmann v. Reynolds, 690 So. 2d 1325, 1327 (Fla. 3d DCA 1997) (citations omitted). See also Glen v. Club Méditerranée, S.A., 450 F.3d 1251, 1256 n.1 (11th Cir. 2006).

Even when Count II is pieced together, it is insufficient to state a viable cause of action. The only time it is alleged that

---

[4] As mentioned earlier, that statute actually defines "person in charge" as "the person on the scene who is in direct, responsible charge of a terminal facility or vessel from which pollutants are discharged, when the discharge occurs." Fla. Stat. § 376.031(15).

Hercules made a "chemical trespass" was from 1972 through 1978, when it operated its stumping operation.  Plaintiff did not own and had no property interest in the Property at that time, and did not acquire any such interest for over twenty years.  Without such ownership or interest, plaintiff has no claim against either defendant for trespass.  Therefore, Count II is dismissed with prejudice as to both Ashland and Hercules.

Defendants very liberally read Count II to include trespass for the later physical entry by Hercules and Ashland onto plaintiff's Property in connection with purported clean-up efforts.  The Court sees no reasonable basis to construe Count II to include such a basis, since Count II specifies only a chemical trespass and its adoption of 120 or so paragraphs is simply a shotgun approach.  Even if the Court were to construe Count II to include such a claim, the Fourth Amended Complaint establishes that that entry onto the Property was authorized at the time it was made.  Accordingly, even if Count II were construed to include this component, it would be dismissed with prejudice.

**(3)  Count III:  Resource Conservation and Recovery Act**

Count III of plaintiff's Fourth Amended Complaint asserts a damages claim against defendants Hercules and Ashland for violation of the federal Resources Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901, <u>et seq.</u>  (Doc. #178, ¶ 151.)  Count III asserts that at all times mentioned Hercules owned and operated

21

a facility as defined by Florida Statute section 376.031(15).  (Id. ¶ 153.)   Count III alleges that plaintiff suffered multiple injuries and damages "[a]s a direct and proximate result of Hercules and Ashland Inc violation of the Resource Conservation and Recovery Act." (Id. ¶¶ 154-56.)  Count III provides absolutely no information about how defendants violated the Resource Conservation and Recovery Act, or how any of the incorporated shotgun paragraphs support such a claim.

Defendants Hercules and Ashland move to dismiss Count III on the basis that the relief requested by plaintiff is unavailable under the RCRA.[5]   (Doc. #213, pp. 18-19.)   While the allegations of Count III fail to state a claim, the Court also agrees that Count III requests relief to which plaintiff is not entitled under the RCRA and fails to request any relief which is authorized by the RCRA.

The "RCRA is a comprehensive environmental statute that governs the treatment, storage, and disposal of solid and hazardous waste." Meghrig v. KFC W., Inc., 516 U.S. 479, 483 (1996) (citation omitted).  See also Parker v. Scrap Metal Processors, Inc., 386

---

[5] Hercules and Ashland also assert that plaintiffs have failed to provide adequate notice as required by the RCRA prior to bringing suit.  (Doc. #213, p. 19 n.8.)   Plaintiff has alleged that he "complied with filing Notices and all other statutory Notice requirements."  (Doc. #178, ¶ 138.)   It is sufficient at this stage of the proceedings to allege that all conditions precedent to filing suit have been met.  Fed. R. Civ. P. 9(c). The motion to dismiss is denied as to this ground.

F.3d 993, 1010 (11th Cir. 2004).  The citizen suit provision of the RCRA provides in pertinent part that "any person may commence a civil action on his own behalf" against "any person . . . who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment."  42 U.S.C. § 6972(a)(1)(B).  "The section applies retroactively to past violations, so long as those violations are a present threat to health or the environment."  Parker, 386 F.3d at 1014 (citing Meghrig, 516 U.S. at 485-86).  To prevail on a claim under section 6972(a)(1)(B), the plaintiffs must prove:

> (1) that the defendant is a person, including, but not limited to, one who was or is a generator or transporter of solid or hazardous waste or one who was or is an owner or operator of a solid or hazardous waste treatment, storage, or disposal facility; (2) that the defendant has contributed to or is contributing to the handling, storage, treatment, transportation, or disposal of solid or hazardous waste; and (3) that the solid or hazardous waste may present an imminent and substantial endangerment to health or the environment.

Parker, 386 F.3d at 1014-15.

Defendants do not argue that Count III fails to adequately allege these three elements.  Rather, defendants argue that plaintiff has not requested any relief which is available to him under the RCRA.  The citizen suit provision limits the relief that a district court may provide in a case such as this:

> The district court shall have jurisdiction . . . to restrain any person who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste referred to in paragraph (1)(B), to order such person to take such other action as may be necessary, or both, . . . .

42 U.S.C. § 6972(a).

> It is apparent from the two remedies described in § 6972(a) that RCRA's citizen suit provision is not directed at providing compensation for past cleanup efforts. Under a plain reading of this remedial scheme, a private citizen suing under § 6972(a)(1)(B) could seek a mandatory injunction, i.e., one that orders a responsible party to "take action" by attending to the cleanup and proper disposal of toxic waste, or a prohibitory injunction, i.e., one that "restrains" a responsible party from further violating RCRA. Neither remedy, however, is susceptible of the interpretation adopted by the Ninth Circuit, as neither contemplates the award of past cleanup costs, whether these are denominated "damages" or "equitable restitution."

Meghrig, 516 U.S. at 484. Plaintiff lists a number of personal injuries and other damages within his RCRA count (Doc. #178, ¶¶ 154-56), none of which are recoverable under the RCRA. Additionally, plaintiff fails to request any relief within his RCRA count which is within the scope of the RCRA. (See id. ¶¶ 151-56.)

While Count III does not request any injunctive relief, Count XII purports to state a claim for "Emergency Injunctive Relief" and an unnumbered section titled "Prayer for Relief" includes a conclusory request for injunctive relief. (Id. ¶¶ 217-25, 232.) The Court will liberally construe the counts so that Count III is

deemed to include the injunctive relief sought in Count XII.  Even so construed, there is still no valid cause of action under the RCRA.   Plaintiff's request for injunctive relief mostly seeks relief outside the scope of the RCRA.   An injunction compels or prohibits future conduct, and does not provide relief for past injuries.  S.E.C. v. Graham, 823 F.3d 1357, 1361 (11th Cir. 2016). Hercules and Ashland have no legal ability to take any of the steps plaintiff wants.   Neither Hercules nor Ashland have the right to go on the Property and do anything to it, as plaintiff clearly recognizes by his trespass notice to defendants.   There is no injunctive order which the Court could issue to either defendant which either could satisfy.   There being no relief the Court can grant, Count III will be dismissed with prejudice.

**(4)  Count V:  Violation of the Clean Air Act**

Count V of plaintiff's Fourth Amended Complaint asserts a claim against defendants Hercules and Ashland for violation of the federal Clean Air Act.  (Doc. #178, ¶ 163.)   Count V alleges that Hercules was the contaminator who illegally sold its un-remediated, unabated facility, which is now plaintiff's Property. (Id. ¶ 165.)   Plaintiff wants the Court to force defendants to immediately remove the top of the ground hazardous chemicals that are dumped and covered up, thus trespassing on his land.   (Id. ¶ 166.)  Plaintiff alleges he suffered various injuries and damages

as a direct result of the violation of the federal Clean Air Act
(Id. ¶ 167.)

Hercules and Ashland move to dismiss Count V for failure to
allege a violation of a specific emissions standard within the
Fourth Amended Complaint. (Doc. #213, p. 18.)  The Court is unable
to find argument in opposition in plaintiff's Response. (See Doc.
#226.)

"The Clean Air Act establishes a series of regulatory programs
to control air pollution from stationary sources (such as
refineries and factories) and moving sources (such as cars and
airplanes)."  Michigan v. E.P.A., 135 S. Ct. 2699, 2704 (2015)
(citations omitted).  The citizen suit provision of the Clean Air
Act provides in relevant part:

> [A]ny person may commence a civil action on his own
> behalf—(1) against any person . . . who is alleged to
> have violated (if there is evidence that the alleged
> violation has been repeated) or to be in violation of
> (A) an emission standard or limitation under this
> chapter . . . .

42 U.S.C. § 7604(a)(1).  "Emission standard or limitations" is
defined as:

> (1) a schedule or timetable of compliance, emission
> limitation, standard of performance or emission standard
>
> . . . or
>
> (3) . . . any condition or requirement under an
> applicable implementation plan relating to
> transportation control measures, air quality maintenance
> plans, vehicle inspection and maintenance programs or
> vapor recovery requirements . . . .

. . .

which is in effect under this chapter . . . or under an applicable implementation plan.

Id. § 7604(f).

In order to bring a citizen suit under the CAA, the claimant must allege a violation of a specific emission standard or limitation in effect under the CAA or the applicable State Implementation Plan (SIP). See Conservation Law Found., Inc. v. Busey, 79 F.3d 1250, 1258 (1st Cir. 1996); Wilder v. Thomas, 854 F.2d 605, 613-14 (2d Cir. 1988). Accordingly, "[t]o allege a violation of [the CAA or] an SIP, plaintiffs must point to a specific strategy or commitment in the [CAA or] SIP and describe, with some particularity, the respects in which compliance with the provision is deficient." Comm. for Environmentally Sound Dev., Inc. v. City of New York, No. 98 CIV.272(SWK), 1998 WL 832606 at *4 (S.D.N.Y. Dec. 1, 1998) (quoting Coal. Against Columbus Ctr. v. City of New York, 967 F.2d 764, 769 (2d Cir. 1992)).

Defendants Hercules and Ashland assert that plaintiff has not identified a single emission standard within his 232-paragraph Fourth Amended Complaint. (Doc. #213, p. 18.) The Court agrees. Plaintiff's Fourth Amended Complaint alleges that "Plaintiff's case is daily violations discharging deadly hazardous chemicals into the air." (Doc. #178, ¶ 53.) Plaintiff discusses specific chemicals that were identified in the soil by the FDEP in 2011.

(Id. ¶¶ 54-58.)   Plaintiff discusses "[t]oxic air emissions of benzene and the many other hazardous wastes and chemicals into the ambient air surrounding Plaintiff Calloway's home, also surrounding Plaintiff Clark's home and the entire site." (Id. ¶ 60.)   Plaintiff's Fourth Amended Complaint contains numerous additional allegations that toxins are in the air.   (Id. ¶¶ 64-67, 70, 85, 133, 136.)   Plaintiff's Fourth Amended Complaint, however, fails to allege any specific "emission standard or limitation" in effect under the CAA or Florida's State Implementation Plan (SIP) that Hercules and Ashland violated. Without these allegations, plaintiff has failed to state a plausible cause of action under the CAA.   Accordingly, Count V is dismissed without prejudice.

### B. Sufficiency of Counts VI Through XIII

#### (1) Claims Against Florida Department of Environmental Protection

The Florida Department of Environmental Protection (FDEP) is a defendant in all the remaining counts.   FDEP argues that all the claims asserted against it are barred by the Eleventh Amendment. (Doc. #196, pp. 2-4.)   Plaintiff responds that the FDEP is not immune from suit, seemingly relying on Florida Statute section 768.28 and the holding in Monell v. Department of Social Services, 436 U.S. 658 (1978).   (Doc. #227, pp. 2-7.)   The Court finds that

the FDEP is immune from the claims filed against it in the Fourth Amended Complaint.

The Eleventh Amendment of the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. Amend. XI.  Despite its literal language, the Eleventh Amendment also precludes suits by citizens against their own states in federal court, Tenn. Student Assistance Corp. v. Hood, 541 U.S. 440, 446 (1973) (collecting cases); Miccosukee Tribe of Indians of Fla. v. Fla. St. Athletic Comm'n, 226 F.3d 1226, 1231 (11th Cir. 2000), and suits in federal courts against an agency that is an arm of the state, Williams v. Dist. Bd. of Trs. of Edison Cmty. Coll., 421 F.3d 1190, 1192 (11th Cir. 2005).

The FDEP is clearly an agency of the state of Florida which functions as an arm of the state of Florida.  The FDEP has "the power and the duty to control and prohibit pollution of air and water in accordance with the law and rules adopted and promulgated by it."  Fla. Stat. § 403.061.  It also has the power and duty to "[e]ncourage and conduct studies, investigations, and research relating to pollution and its causes, effects, prevention, abatement, and control."  Id. § 403.061(18).  "The [FDEP] shall implement such programs in conjunction with its other powers and

29

duties and shall place special emphasis on reducing and eliminating contamination that presents a threat to humans, animals or plants, or to the environment." Id. § 403.061. The FDEP has the authority to enforce violations of Chapter 403. Id. § 403.121. The FDEP also has extensive powers concerning addressing pollutant discharge prevention and removal. See id. § 376.051.

FDEP is therefore entitled to Eleventh Amendment immunity unless its immunity has been waived or abrogated. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984); Seminole Tribe of Fla. v. Florida, 11 F.3d 1016, 1021-22 (11th Cir. 1994). The Court finds that the FDEP has not waived its Eleventh Amendment immunity and no statute abrogates it.

Plaintiff briefly points to section 768.28, Florida Statutes. (Doc. #227, pp. 5-6.) Section 768.28 is titled "Waiver of sovereign immunity in tort actions; recovery limits; limitations on attorney fees; statute of limitations; exclusions; indemnification; risk management programs." Fla. Stat. § 768.28. While this statute does deal with specific situations where the state of Florida has waived its sovereign immunity in state court tort suits, subsection 18 explicitly excludes actions in federal court from this waiver. Id. § 768.28(18) ("No provision of this section . . . shall be construed to waive immunity of the state or any of its agencies from suit in federal court, as such immunity is guaranteed by the Eleventh Amendment to the Constitution of the

United States . . . .")   The Eleventh Circuit has consistently held that section 768.28 does not waive Florida's Eleventh Amendment immunity.   Schopler v. Bliss, 903 F.2d 1373, 1379 (11th Cir. 1990); Hamm v. Powell, 874 F.2d 766, 770 n.3 (11th Cir. 1989); Gamble v. Fla. Dep't of Health and Rehab. Servs., 779 F.2d 1509, 1514-19 (11th Cir. 1986). See also Hill v. Dep't of Corr., 513 So. 2d 129, 133 (Fla. 1987).

In his Response, plaintiff repeatedly states that he is bringing his claims against the FDEP pursuant to section 1983, and that the decision in Monell v. Department of Social Services "held that local government players are not immune from suit under 42 USC 1983." (Doc. #227, p. 3.)  Neither 42 U.S.C. § 1983 nor Monell are of assistance to defendant on the issue of Eleventh Amendment immunity.

It is clearly established that section 1983 has not waived Florida's Eleventh Amendment immunity.   "Congress has not abrogated Eleventh Amendment immunity in section 1983 cases." Cross v. Ala. State Dep't of Mental Health & Mental Retardation, 49 F.3d 1490, 1502 (11th Cir. 1995) (citing Carr v. City of Florence, 916 F.2d 1521, 1525 (11th Cir. 1990)). See also Gamble, 779 F.2d at 1512. In Monell, the Supreme Court held that "persons" within the meaning of section 1983 includes individuals, municipalities, and other local government units.   436 U.S. at 690-91. "Persons" does not include a state or an arm of a state.

31

<u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71 (1989).
Accordingly, <u>Monell</u> does not authorize suit against the FDEP in
federal court for section 1983 claims.

Lastly, it is possible that plaintiff may be arguing that the
Ex parte Young exception[6] to Eleventh Amendment immunity applies
to the case at hand.  (<u>See</u> Doc. #227, p. 2) ("The FDEP as an agency
has allowed these daily violations to continue for 3 decades . .
. .";  "A state agency does not possess the immunity to
intentionally kill, maim, lie, commit fraud or violate federal
environmental laws or the U.S. Constitution.").

"Under the doctrine of <u>Ex parte Young</u>, there is a long and
well-recognized exception to [Eleventh Amendment immunity] for
suits against state officers seeking prospective equitable relief
to end continuing violations of federal law."  <u>Fla. Ass'n of Rehab.</u>
<u>Facilities, Inc. v. State of Fla. Dep't of Health and Rehab.</u>
<u>Servs.</u>, 225 F.3d 1208, 1219 (11th Cir. 2000) (citations omitted).
<u>Ex parte Young</u> applies only when state officials are sued for
prospective relief in their official capacity.   While the <u>Ex parte</u>
<u>Young</u> exception applies to state officials, it does not apply to
state agencies.   <u>Eubank v. Leslie</u>, 210 F. App'x 837, 844 (11th
Cir. 2006) ("State agencies, however, are never subject to
unconsented suit, even under the doctrine of <u>Ex parte Young</u>. . .

---

[6] <u>Ex parte Young</u>, 209 U.S. 123 (1908).

. It does not permit suit against state agencies or the state itself, even when the relief is prospective." (citing Halderman, 465 U.S. at 100-03)).   This is because "[t]he theory behind Ex parte Young is that a suit alleging a violation of the federal constitution against a state official in his official capacity for injunctive relief on a prospective basis is not a suit against the state, and, accordingly, does not violate the Eleventh Amendment." Camm v. Scott, 834 F. Supp. 2d 1342, 1348 (M.D. Fla. 2011) (quoting Grizzle v. Kemp, 634 F.3d 1314, 1319 (11th Cir. 2011)).   Even when read liberally, plaintiff has not asserted any claims against FDEP officials in their official capacities, and therefore the Ex parte Young exception is inapplicable to the FDEP.

Accordingly, FDEP is entitled to Eleventh Amendment immunity. Plaintiff's claims against the FDEP for monetary damages as set forth in Counts VI through XIII are dismissed with prejudice as to filing in federal court, but otherwise without prejudice.

### (2)  Count VI: Breach of Special Fiduciary Duty

Count VI asserts a claim for breach of special fiduciary duty against all named defendants.   (Doc. #178, ¶¶ 169-74.)   All defendants move to dismiss Count VI on the basis that no fiduciary duty exists between plaintiff and any of the defendants.   (Doc. #196, pp. 7-9; Doc. #213, pp. 20-22; Doc. #214, pp. 17-18; Doc. #215, pp. 17-19.)   The Court agrees.

33

In Florida, "[t]he elements of a breach of fiduciary duty action are (1) the existence of a fiduciary duty and (2) the breach of that duty that was the proximate cause of the plaintiff's damages." Collins v. Countrywide Home Loans, Inc., 680 F. Supp. 2d 1287, 1296 (M.D. Fla. 2010) (citing Gracey v. Eaker, 837 So. 2d 348, 353 (Fla. 2002)). A fiduciary relationship exists between parties "where confidence is reposed by one party and a trust accepted by the other." Doe v. Evans, 814 So. 2d 370, 374 (Fla. 2002) (quoting Quinn v. Phipps, 113 So. 419, 421 (Fla. 1927)). "A fiduciary relationship may be either express or implied." Hogan v. Provident Life and Accident Ins. Co., 665 F. Supp. 2d 1273, 1287 (M.D. Fla. 2009) (citing Maxwell v. First United Bank, 782 So. 2d 931, 933 (Fla. 4th DCA 2001)). An express fiduciary relationship is created either by "contract or legal proceedings." Id. (citation omitted). An implied fiduciary relationship is based "upon the specific facts and circumstances surrounding the relationship of the parties and the transaction in which they are involved." Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp., 850 So. 2d 536, 540 (Fla. 5th DCA 2003) (citations omitted). "When the parties are dealing at arm's length, a fiduciary relationship does not exist because there is no duty imposed on either party to protect or benefit the other." Id. at 541 (citations omitted).

Here, plaintiff has failed to plausibly allege that there was a fiduciary relationship between himself and any of the defendants.

34

Plaintiff alleges that "[a]ll Parties entering on Plaintiffs land were to be licensed Florida contractors working on Plaintiffs property for the benefit of the owner and as beneficiary, and owes a fiduciary duty to the owner." (Doc. #178, ¶ 115.)  Plaintiff goes on to allege that "[a]ll on Plaintiffs property requires a duty to disclose material facts and owes a fiduciary duty of Trust and confidence to the land owner beneficiary principal Plaintiff Clark." (Id.)

The Court does not find any support for plaintiff's contention that a fiduciary relationship existed between plaintiff and defendants solely by virtue of defendants allegedly being Florida licensed contractors and performing work on plaintiff's property. Plaintiff alleges that URS defendants performed contractual work (id. ¶ 124), and alludes to the fact that the other defendants did as well (id. ¶ 106, 115), but he provides no information about the contract(s) which would plausibly suggest a fiduciary relationship between such defendants and plaintiff.  Further, the Court does not find any plausible basis for the imposition of an implied fiduciary duty within the plaintiff's Fourth Amended Complaint.[7]

---

[7] There is one sentence within plaintiff's Fourth Amended Complaint that alleges a representation of a fiduciary relationship.  Plaintiff alleges that "Vinyard, Kutash, and Bell made fraudulent misrepresentations to Clark and Callaway stating this was a special relationship and a special fiduciary between Plaintiffs and the FDEP and licensed specialized contractors who would perform the work for the Plaintiffs." (Doc. #178, ¶ 106.) This could only arguably support a claim of a breach of fiduciary

The Court finds that plaintiff has failed to plausibly allege the existence of a fiduciary relationship between himself and any defendant.[8]  Accordingly, Count VII is dismissed without prejudice.

**(3)  Count VII:  Common Law Fraud**

Count VII of the Fourth Amended Complaint alleges a claim for common law fraud against all defendants.  (Id. ¶ 175.)  Plaintiff alleges that all defendants "made false statements of material facts to induce Plaintiff to allow them on his property" as part of their scheme to continue felony violations of contaminated waste being discharged daily from the former facility onto plaintiff's property.  (Id. ¶ 177.)

Defendants assert that Count VII fails to state a claim for common law fraud because (1) plaintiff has failed to allege with sufficient particularity the basis of the claim and (2) the

---

duty against FDEP, as these individuals were employees/agents of FDEP, but FDEP has been dismissed from this action based upon the Eleventh Amendment.  There is no allegation that these individuals were acting on behalf of, or could otherwise bind, the other "licensed specialized contractors" to a fiduciary relationship with plaintiff.

[8] FDEP Employees also assert that plaintiff has failed to satisfy conditions precedent to bringing suit.  (Doc. #196, pp. 7-8.)  As stated previously, plaintiff has alleged that he "complied with filing Notices and all other statutory Notice requirements."  (Doc. #178, ¶ 138.)  It is sufficient at this stage of the proceedings to allege that all conditions precedent to filing suit have been met.

Additionally, the Court need not address the qualified immunity assertion given the dismissal on other grounds.

allegations do not support an actionable fraud claim.  (Doc. #196, pp. 10-11; Doc. #213, pp. 19-20; Doc. #214, pp. 15-17; Doc. #215, pp. 15-17.)

In Florida, the elements of common-law fraud are:

(1) a false statement of fact; (2) known by the person making the statement to be false at the time it was made; (3) made for the purpose of inducing another to act in reliance thereon; (4) action by the other person in reliance on the correctness of the statement; and (5) resulting damage to the other person.

Gandy v. Trans World Comput. Techn. Grp., 787 So. 2d 116, 118 (Fla. 2d DCA 2001).  Rule 9(b) requires allegations of fraud to be pleaded "with particularity."  Fed. R. Civ. P. 9(b).  "In a complaint subject to Rule 9(b)'s particularity requirement, plaintiffs retain the dual burden of providing sufficient particularity as to the fraud while maintaining a sense of brevity and clarity in the drafting of the claim, in accord with Rule 8." Wagner v. First Horizon Pharm. Corp., 464 F.3d 1273, 1278 (11th Cir. 2006) (citation omitted).

To satisfy Rule 9(b)'s "particularity" standard, we generally require that a complaint identify (1) the precise statements, documents or misrepresentations made; (2) the time and place of and persons responsible for the statement; (3) the content and manner in which the statements misled the plaintiff; and (4) what the Defendants gain[ed] by the alleged fraud.

W. Coast Roofing & Waterproofing, Inc. v. John Manville, Inc., 287 F. App'x 81, 86 (11th Cir. 2008) (citing Ambrosia Coal & Constr. Co. v. Pages Morales, 482 F.3d 1309, 1316-17 (11th Cir. 2007)).

"Rule 9(b) requires more than conclusory allegations that certain statements were fraudulent; it requires that a complaint plead facts giving rise to an inference of fraud." Id. (citation omitted). "Failure to satisfy Rule 9(b) is a ground for dismissal of a complaint." Corsello v. Lincare, Inc., 428 F.3d 1008, 1012 (11th Cir. 2005), cert. denied, 549 U.S. 810 (2006).

Plaintiff alleges that all defendants knowingly and intentionally made false statements of material fact in order to induce plaintiff to allow them onto his property in order to "destroy and cover up evidence and reduce contaminator Hercules Inc and buyer Ashland Inc['s] liabilities to clean up, remediate, and abate . . . [the] site." (Doc. #178, ¶ 177.)  This is clearly insufficient to meet the particularity requirement of Rule 9. However, plaintiff has additional allegations scattered throughout the complaint.  These are all insufficient.

**(a)  Hercules & Ashland**

Plaintiff's Fourth Amended Complaint contains the following allegations regarding Hercules and Ashland that could be related to plaintiff's fraud count:  (1) conclusory allegations regarding "all defendants" making fraudulent misrepresentations (id. ¶¶ 43, 81-82, 92, 95, 98, 110, 121); (2) conclusory allegation that plaintiff was defrauded and misrepresented by Hercules and Ashland (id. ¶ 37); (3) an allegation regarding a promise to compensate plaintiff for building roads and clearing the site (id. ¶ 71); (4)

38

an allegation that Cooper/Straton (an employee of Hercules) and Yeargon (employee of FDEP) were "compiling documented excuses, delays, no diligence and no care to the daily felony violations" (id. ¶ 86); (5) an allegation that Hercules and Ashland paid for falsified reports to lessen their liabilities for the contamination on the site (id. ¶ 93); (6) an allegation that "Ashland and Hercules Inc. by Tim Hassett in person in 2008 at the ranch, by phone and wire 2008, 3 more times" (id. ¶ 106); and (7) an allegation that "Ashland and Hercules's employee Tim Hassett . . . intentionally stated in person in 2008 to Plaintiff Clark in front of witnesses that there was hazardous chemicals on the property nothing harmful on the property" (id. ¶ 121).

The Court finds the allegations as to "all defendants" and the conclusory allegations that Hercules and Ashland "defrauded and misrepresented" insufficient to meet the particularity standard. As to plaintiff's claim regarding reimbursement for expenses, this Court already held that this does not amount to actionable fraud and, if anything, is "a mere promise not performed, which, by itself, cannot form the predicate for actionable fraud." (Doc. #67, p. 15) (quoting Biscayne Inv. Grp. Ltd. v. Guarantee Mgmt. Servs., Inc., 903 So. 2d 251, 255 (Fla. 3d DCA 2005)). The Court also finds the allegations regarding Cooper documenting excuses and delays in number 4 and Hercules and Ashland paying for falsified reports in number 5, without more, to be vague

39

and insufficient to meet the particularity requirement. The allegations in numbers 6 and 7 above are similarly insufficient as it is unclear what statement plaintiff is even referring to and plaintiff's own statement in paragraph 125 is contradictory. Accordingly, the Court finds that plaintiff has failed to allege fraud as to Hercules and Ashland and grants Hercules and Ashland's motion to dismiss as to Count VII without prejudice.

**(b)  FDEP Employees**

Plaintiff's Fourth Amended Complaint contains the following allegations regarding FDEP Employees that could arguably support plaintiff's fraud count: (1) same general allegations as to all defendants (Doc. #178, ¶¶ 43, 81-82, 92, 95, 98, 110, 121); (2) an allegation that FDEP Employees' acts were illegal (id. ¶ 86); (3) an allegation that Yeargon fabricated reports and Vineyard, Stevenson, Bell, and Kutash were aware of it (id. ¶ 103); (4) an allegation that Vineyard, Bell, and Kutash fraudulently misrepresented that there would be a special relationship between plaintiff and FDEP and licensed contractors, that there would be full disclosure, and that all contactors possessed Florida licenses and carried a minimum of 1 million dollars in insurance (id. ¶ 106); (5) an allegation that Kutash, Vineyard, Bell, and Stevenson promised copies of all licenses, bonds, insurance policies, and work plans (id.); (6) an allegation that Bell promised to be present on the property when test samples were taken

40

(id.); (7) allegations that Vinyard, Kutash, and Bell promised to provide copies of each and every test and every finding (id.); and (8) an allegation that Vinyard, Kutash, and Bell misrepresented Hercules's 1993 agreement (id.).

As to the general assertions as to all defendants, the Court finds that these lack the requisite particularity to support a claim of fraud. Further, general allegations of illegal acts in number 2 and fabrication of reports in number 3 are similarly insufficient. The Court finds that the allegations regarding promises made by Bell, Kutash, Stevenson, and Vinyard in numbers 5, 6, and 7 are merely promises to do something and do not amount to actionable fraud. See Biscayne Inv. Grp. Ltd., 903 So. 2d at 255. As to the allegations regarding the 1993 agreement in number 8, the Court finds that this lacks sufficient particularity to support a claim of fraud.

The allegations that Vineyard, Bell, and Kutash fraudulently misrepresented that all contactors possessed Florida licenses and carried a minimum of 1 million dollars in insurance could be a statement upon which a fraud claim may be premised. However, it is not pleaded with the required specificity under Rule 9(b). Accordingly, the Court grants defendant FDEP Employees' motion to dismiss Count VII without prejudice.

**(c)  URS Defendants**

The Fourth Amended Complaint contains the following allegations regarding URS defendants that could arguably support a claim of fraud:  (1) general allegations as to all defendants (Doc. #178, ¶¶ 43, 81-82, 92, 95, 98, 110, 121); (2) allegations that URS, Desilet, and Siersema stated that plaintiff would be compensated for expenses incurred (id. ¶ 71); (3)  an allegation that "URS, Siersema, and Desilet made those representations in 2008 in person at the ranch, 2009 twice, 2010 again by phone/wire," (id. ¶ 106); (4) an allegation that "URS's Siersema and Desilet intentionally stated in person in 2008 to Plaintiff Clark in front of witnesses at the ranch that there was hazardous chemicals on the property nothing harmful on the property," (id. ¶ 121); and (5) an allegation that URS defendants committed fraud by covering up and fraudulently misrepresenting to plaintiff the extent of the contamination on plaintiff's property (id. ¶ 123).

As held previously, the Court finds that the general allegations regarding all defendants do not meet the particularity requirement of Rule 9.  The allegation regarding being compensated for expenses incurred is merely a promise to do something and does not amount to actionable fraud.  See Biscayne Inv. Grp. Ltd., 903 So. 2d at 255.  The allegations in numbers 3 and 4 above are similarly insufficient as it is unclear what statements plaintiff is even referring to and plaintiff's own statement in paragraph

42

125 is contradictory.  Lastly, plaintiff's allegation that URS defendants committed fraud by covering up and misrepresenting the contamination is similarly insufficient to meet the particularity requirement.  It does not allege what false statement of material fact they are identifying, who stated it, and to whom, etc. Accordingly, URS defendants' motion to dismiss Count VII is granted and Count VII is dismissed without prejudice as to these defendants.

### (d)  Hassett & Straton

The only allegations within plaintiff's Fourth Amended Complaint directed at Hassett and Straton have already been addressed above and found to be insufficient to support a fraud claim.  Accordingly, Hassett and Straton's motion to dismiss Count VII is granted, and Count VII is dismissed without prejudice as to these defendants.

### (4)  Count VIII: Personal Injury

In Count VIII, plaintiff alleges a cause of action for a tort which plaintiff calls "Personal Injury." (Doc. #178, ¶¶ 182-86.) Plaintiff seeks to recover money damages from all defendants for the personal injuries he suffered as the direct and proximate result of "the wrongful conduct and actions" of defendants. (Id. ¶ 82.)

There is no such global cause of action in Florida.  While a person may recover damages for personal injuries, these are

recovered by bringing a valid and recognized cause of action, such as negligence or battery.  Accordingly, plaintiff's cause of action of "Personal Injury" is dismissed with prejudice.

### (5)  Count IX:  Fourteenth Amendment

In Count IX, only the FDEP is named as a defendant, and is alleged to have violated plaintiff's Fourteenth Amendment rights. As discussed earlier, this claim against the FDEP is barred in federal court pursuant to the Eleventh Amendment.  Accordingly, Count IX is dismissed with prejudice as to refiling in federal court, and otherwise without prejudice.

### (6)  Counts X & XI: Federal RICO Provisions

Counts X and XI assert claims pursuant to the federal RICO statute against all defendants.  (Doc. #178, ¶¶ 196-216.)  Count X alleges a "Federal RICO conspiracy to defraud" asserting that from 1993 to the present all defendants conspired to "create, maintain, and support a criminal and civil syndicate and or illegal enterprise as alleged in this complaint for illegal purposes and to commit fraud and misrepresentation on Plaintiffs to continue their illegal enterprise."  (Id. ¶ 198.)  Count XI alleges a "federal RICO" claim against all defendants asserting that Hercules, Ashland, the FDEP, and URS were an "enterprise" and that the individual defendants participated in the conduct of the enterprise's affairs through a pattern of racketeering activity,

i.e., thousands of felony violations in connection with plaintiff and his real property.  (Id. at ¶ 206.)

Defendants[9] move to dismiss these counts on various grounds. Essentially, defendants assert that the RICO claims are barred by the applicable statute of limitations and the claims fail to sufficiently allege the essential elements.  The Court agrees with both arguments.

Section 1962(c) of the RICO Act makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."  18 U.S.C. § 1962(c).  "Four elements must be proven in a RICO case:  (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  Lehman v. Lucom, 727 F.3d 1326, 1330 (11th Cir. 2013) (quoting Williams v. Mohawk Indus., Inc., 465 F.3d 1277, 1282 (11th Cir.2006) (per curiam)). "The civil RICO provision permits a private plaintiff 'injured in his business or property by reason of a violation of section 1962' to recover treble damages."  Id.  (citation omitted).

As with general fraud causes of actions, the standards set forth in Iqbal and Twombly are altered for claims dealing with

---

[9] Claims against the FDEP have already been dismissed from these counts on Eleventh Amendment immunity grounds.

fraud in RICO claims.   _Miccosukee Tribe of Indians of Fla. v._
_Cypress_, 814 F.3d 1202, 1212 (11th Cir. 2015).

> When a plaintiff asserts RICO and RICO conspiracy
> claims, the court must look at the underlying
> allegations of racketeering predicates to determine the
> nature of the alleged wrongdoing.  When the underlying
> allegations assert claims that are akin to fraud, the
> heightened pleading standards of Rule 9(b) apply to the
> RICO claims.  As such, the pleading requirements do not
> extend merely to plausibility, they demand plausibility
> based upon Rule 9(b)'s heightened degree of specificity.
> To satisfy the Rule 9(b) standard, RICO complaints must
> allege: (1) the precise statements, documents, or
> misrepresentations made; (2) the time and place of and
> person responsible for the statement; (3) the content
> and manner in which the statements misled the
> Plaintiffs; and (4) what the Defendants gained by the
> alleged fraud.

_Id._ (internal citation and quotations marks omitted).  In pleading
a civil RICO claim premised upon fraud, the "plaintiff must allege
facts with respect to each defendant's participation in the fraud."
_Am. Dental Ass'n v. Cigna Corp._, 605 F.3d 1283, 1291 (11th Cir.
2010) (citation omitted).  Plaintiff premised his RICO claims on
mail and wire fraud so he is required to satisfy the pleading
requirements of Rule 9(b).  _Miccosukee Tribe_, 814 F.3d at 1212.

While the Court agrees that the federal RICO claims are not
sufficiently pleaded, it is not necessary to discuss the pleading
deficiencies in detail because both claims are barred by the
applicable statute of limitations.  As discussed previously, a
complaint may be dismissed when the merits of an affirmative
defense "clearly appears on the face of the complaint."  _Quiller_,

46

727 F.2d at 1069; La Grasta, 358 F.3d at 845 ("[A] Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is 'apparent from the face of the complaint' that the claim is time-barred" (quoting Omar, 334 F.3d at 1251)).  The Fourth Amended Complaint is such a complaint.

Civil RICO claims are subject to a four-year statute of limitations.  Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143, 156 (1987); Lehman, 727 F.3d at 1330.  A civil RICO claim accrues, and the four-year limitations period begins to run, "when the injury was or should have been discovered, regardless of whether or when the injury is discovered to be part of a pattern of racketeering." Lehman, 727 F.3d at 1330 (citing Maiz v. Virani, 253 F.3d 641, 676 (11th Cir. 2001)).  The Eleventh Circuit has adopted a separate accrual rule in civil RICO actions which provides that "if a new RICO predicate act gives rise to a new and independent injury, the statute of limitations clock will start over for the damages caused by the new act." Id. at 1330-31 (citations omitted).  However, "the plaintiff cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period.  By extension, when an injury is a continuation of an initial injury, it is not new and independent." Id. at 1331 (alterations and citations omitted).

Plaintiff Clark filed a RICO claim for the first time in this case on February 11, 2016, when he filed his Fourth Amended Complaint.  (Doc. #178.)  The four year statute of limitations bars RICO claims accruing before February 11, 2012, unless there is a separate accrual date for subsequent conduct.  The Fourth Amended Complaint establishes that defendant knew of his injury no later than May 2008, and that there was no separate accrual.

In brief, the gist of plaintiff's claims is that he purchased an 81-acre parcel of real property in 2001 (id. ¶¶ 28, 32), and he had no knowledge that the property had been contaminated by a prior owner until he received a letter from the FDEP in 2008, (id. ¶¶ 29, 31-32, 94, 131).  In 2008 the contaminated waste site made plaintiff very worried, and he initially fully cooperated with FDEP's clean-up efforts (id. ¶¶ 43, 71, 94), but has been consistently conned and lied to by defendants since 2008 (id. ¶¶ 31, 35, 104-06, 110, 121).  FDEP has looked the other way, is corrupt, and has entered into an illegal racketeering enterprise regarding the Property.  (Id. ¶¶ 36, 42, 51-52.)  Plaintiff received a copy of a false 2009 report in 2011 regarding the extent of the contamination.  (Id. ¶¶ 66, 72.)  Plaintiff is now stuck with the contaminated property, which has caused him a variety of injuries.  (Id. ¶ 75.)  The allegations which are within the statute of limitations continue with the same type of complaints about the defendants:  They are corrupt conspirators whose

48

continuing conduct is leaving plaintiff's property contaminated and injuring plaintiff in a variety of ways.

Thus, the Fourth Amended Complaint establishes on its face that plaintiff had discovered the contamination injury well before February 11, 2012. The Fourth Amended Complaint also establishes that there was not a new RICO predicate act within the statute of limitations, and that all of plaintiff's injuries were a continuation of the initial injuries, and not new and independent.[10] Accordingly, Counts X and XI of the Fourth Amended Complaint are dismissed with prejudice as barred by the statute of limitations.

### (7) Counts XII & XIII: Emergency Injunctive Relief & Punitive Damages

Counts XII and XIII assert claims for Emergency Injunctive Relief and Punitive Damages, respectively. (Doc. #178, ¶¶ 217-31.) There are no such freestanding causes of action.

As to plaintiff's purported cause of action of "Emergency Injunctive Relief," "injunctive relief is not a proper claim for relief in and of itself, but rather a remedy that is available upon a finding of liability on a claim." GlobalOptions Servs., Inc. v. N. Am. Training Gro., Inc., 131 F. Supp. 3d 1291, 1302

---

[10] Even if plaintiff could establish that the Fourth Amended Complaint related back to the filing of an earlier Complaint pursuant to Federal Rule of Civil Procedure 15(c), it would still not save his claims from being untimely.

(M.D. Fla. 2015) (citing <u>Alabama v. U.S. Army Corps of Eng'rs</u>, 424 F.3d 1117, 1127 (11th Cir. 2005), <u>cert. denied</u>, 547 U.S. 1192 (2006)).  Because this is not a proper freestanding claim, Count XII is dismissed with prejudice.[11]  As to plaintiff's count for punitive damages, the Court finds that this also is not a valid independent cause of action and dismisses Count XIII with prejudice.  <u>Echols v. RJ Reynolds Tobacco Co.</u>, No. 2:13-CV-14215, 2014 WL 5305633, at *6 (S.D. Fla. Oct. 15, 2014).

### C. Denial of Leave to File Another Complaint

The Court has dismissed Counts V, VI, and VII without prejudice (except as to FDEP).  The Court declines to provide plaintiff with a further opportunity to amend his complaint as to these claims.  Plaintiff waited years after being notified of the pollutant issue, and this is plaintiff's fifth complaint attempting to state various causes of action.  The Court has provided plaintiff with ample opportunities to state claims if he can do so.  While defendant is proceeding *pro se*, he is an experienced federal litigator, having filed at least 7 federal suits in the last 18 years, and been a party to numerous other federal suits.

---

[11] This does not detrimentally affect plaintiff's claim under the RCRA because, as discussed within the portion analyzing the RCRA claim, plaintiff has also requested emergency injunctive relief within his Prayer for Relief.

### D. Remaining Counts and Jurisdiction

What remains of the Fourth Amended Complaint is Count I against Hercules and Count IV against Hercules.  The Court will redact the Fourth Amended Complaint, striking the claims which have been dismissed and the allegations having no possible relevance to the remaining counts.  That modified Fourth Amended Complaint will be docketed in this case, and shall be responded to by Hercules within fourteen (14) days of the date of this Opinion and Order.

The Court began this Opinion and Order by noting its jurisdiction based upon federal question jurisdiction.  Based upon its rulings, the Court's jurisdiction is premised upon diversity of citizenship.

Accordingly, it is now

**ORDERED:**

1.   Defendants FDEP and its Employees' Motion to Dismiss (Doc. #196) is **GRANTED in part and DENIED in part** as set forth above.

2.   Defendants Hercules Incorporated and Ashland Inc.'s Motion to Dismiss Plaintiff's Fourth Amended Complaint (Doc. #213) is **GRANTED in part and DENIED in part** as set forth above.

3.   Defendants Timothy Hassett and Carolyn J. Straton's Motion to Dismiss Plaintiff's Fourth Amended Complaint (Doc. #214) is **GRANTED in part and DENIED in part** as set forth above.

4.     Defendants URS Corporation, Edward W. Siersema, Jr., and Bruce Desilet's Motion to Dismiss Plaintiff's Verified Fourth Amended Complaint, and, Alternatively, for a More Definite Statement (Doc. #215) is **GRANTED in part and DENIED in part** as set forth above.

5.     All claims against FDEP as an agency are **dismissed with prejudice** as to refiling in federal court and otherwise without prejudice.

6.     Count I as to Ashland; Count II; Count III; Count IV as to Ashland; Counts VI and VII as to FDEP; Counts VIII through XIII are dismissed with prejudice**.**  Counts I and IV remain as to Hercules.  The remaining counts are dismissed without prejudice, but the Court declines to allow an additional amendment.

7.     The Clerk of the Court shall docket the Court's modified Fourth Amended Complaint.

8.     Defendant shall have **FOURTEEN (14) DAYS** from the date of this Opinion and Order to file an Answer to the modified Fourth Amended Complaint.

**DONE AND ORDERED** at Fort Myers, Florida, this ___3rd___ day of February, 2017.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Parties of Record